408 Pa. Superior Ct. 435 (1991)
597 A.2d 111
COMMONWEALTH of Pennsylvania
v.
Shawn C. MURRAY, Appellant.
Superior Court of Pennsylvania.
Argued December 18, 1990.
Filed September 13, 1991.
*436 Michael J. Toms, Waynesboro, for appellant.
David W. Rahauser, Asst. Dist. Atty., Chambersburg, for Comm., appellee.
Before CIRILLO, President Judge, and CAVANAUGH, WIEAND, OLSZEWSKI, DEL SOLE, POPOVICH, JOHNSON, HUDOCK and FORD ELLIOTT, JJ.
OPINION PER CURIAM:
The issue in this case is whether we may review the decision of a trial court which has denied a motion for a new trial in a criminal case based on a challenge to the weight of the evidence.[1]
We have traditionally reviewed the exercise of discretion by a trial court in matters involving challenges to the weight of the evidence. We stated in Commonwealth v. Taylor, 324 Pa.Super. 420, 425, 471 A.2d 1228, 1230 (1984):
Whether a new trial should be granted on grounds that the verdict is against the weight of the evidence is addressed *437 to the sound discretion of the trial judge, and his decision will not be reversed on appeal unless there has been an abuse of discretion.... The test is not whether the court would have decided the case in the same way but whether the verdict is so contrary to the evidence as to make the award of a new trial imperative so that right may be given another opportunity to prevail.
See also, Commonwealth v. Whiteman, 336 Pa.Super. 120, 485 A.2d 459 (1984).[2]
As recently as Commonwealth v. Purcell, 403 Pa.Super. 342, 589 A.2d 217 (1991) we held that our role in reviewing the weight of the evidence is limited and the determination whether to grant a new trial on the grounds that the verdict is against the weight of the evidence rests within the discretion of the trial court whose decision will not be disturbed in the absence of an abuse of discretion. We are cognizant that in many instances challenges to the weight of the evidence are in reality, attacks on the sufficiency of the evidence.[3] Nevertheless, there is a clear distinction between the two.
Until recent years there appeared to have been no question as to our authority to review determinations by the trial court concerning weight of the evidence. However, in Commonwealth v. Nelson, 514 Pa. 262, 271, n. 3, 523 A.2d 728, 733, n. 3 (1987) the Supreme Court stated in a footnote:
It is a rule of this Commonwealth that an appellate tribunal should not entertain a challenge to the weight of the evidence since their examination is confined to the "cold record."
*438 This statement was reinforced by the Supreme Court in Commonwealth v. Wallace, 522 Pa. 297, 315, 561 A.2d 719, 728 (1989) wherein the court stated: "A challenge to the weight of the evidence is not appealable," citing Commonwealth v. Nelson, supra.
In Commonwealth v. Eddowes, 397 Pa.Super. 551, 580 A.2d 769 (1990), opinion by Olszewski, J., we held that a ruling on a challenge to the weight of the evidence is subject to appellate review, notwithstanding the Supreme Court's statements in Commonwealth v. Nelson, supra, and Commonwealth v. Wallace, supra.[4]
In this case, the appellant, Shawn C. Murray, was found guilty of homicide by motor vehicle while under the influence of alcohol. On March 11, 1988 appellant and three companions embarked on an evening of "bar hopping." One member of the group purchased a prescription drug known as Zanax and a case of beer. The group visited several bars and at each, the appellant was not served, as he was under age. Nevertheless, he consumed at least three sixteen-ounce cans of beer and several Zanax pills.
The appellant was the driver of the vehicle in which the group travelled during the evening. Near the intersection of Route 75 and Fannettsburg Road, the vehicle left the roadway which was paved and 19½ feet wide, crossed a 2 *439 foot wide berm and went into a ditch, ultimately coming to rest against a concrete abutment.
One of the passengers, Timothy Smith, was wedged in the front of the vehicle and died as a result of "blunt trauma" to his skull. The appellant's blood alcohol content as revealed by tests taken at Hershey Medical Center some three hours after the accident, was found to be .14 per cent.
Notwithstanding the dicta of the Supreme Court in Commonwealth v. Nelson, supra, and Commonwealth v. Wallace, supra, we conclude that we may review the trial court's exercise of its discretion in denying a motion for a new trial based on a challenge to the weight of the evidence. The law in this Commonwealth has long been that a new trial may be ordered "on the ground that the verdict is against the weight of the evidence, when the jury's verdict is so contrary to the evidence as to shock one's sense of justice, and the award of a new trial is imperative so that right may be given another opportunity to prevail." 10 Standard Pennsylvania Practice, New Trial, § 62:59. See also, Commonwealth v. Whitney, 511 Pa. 232, 512 A.2d 1152 (1986); and Commonwealth v. Datesman, 343 Pa.Super. 176, 494 A.2d 413 (1985). As Justice McDermott stated in Thompson v. City of Philadelphia, 507 Pa. 592, 598, 493 A.2d 669, 672 (1985), the Supreme Court "has repeatedly emphasized that it is not only a trial court's inherent fundamental and salutary power, but its duty to grant a new trial when it believes the verdict was against the weight of the evidence and resulted in a miscarriage of justice."
We stated in Commonwealth v. Taylor, 324 Pa.Super. 420, 425, 471 A.2d 1228, 1230 (1984): "a motion for new trial on grounds that the verdict [was] contrary to the weight of the evidence concedes that there [was] sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict [was] against the weight of the evidence." Whether a new trial should be granted on such grounds is addressed to the sound discretion of the trial court. *440 Thompson v. City of Philadelphia, supra; Commonwealth v. Zapata, 447 Pa. 322, 290 A.2d 114 (1972); Commonwealth v. Ruffin, 317 Pa.Super. 126, 463 A.2d 1117 (1983).
The exercise of discretion by the trial judge in denying a motion for a new trial based on a challenge to the weight of the evidence is not unfettered. The need for appellate review was acknowledged by the Supreme Court in Commonwealth v. Powell, 527 Pa. 288, 590 A.2d 1240 (1991). In holding that a trial court could grant a new trial "in the interest of justice," the Court, per Nix, C.J., observed:
[w]hile the scope of a trial court's discretionary powers to deal with the factual circumstances it confronts is broad, it is not unlimited. It necessarily follows that the requirement that appellate courts defer to that exercise of discretion is not without limitation either. The propriety of such an exercise of discretion may be assessed by the appellate process when it is apparent there was an abuse of that discretion.
527 Pa. at ___, 590 A.2d at 1244.
The decisions in Commonwealth v. Wallace, supra, and Commonwealth v. Nelson, supra, did not refer to nor purport to overrule the line of cases in Pennsylvania in which appellate courts have reviewed the exercise of the lower court's discretion in weighing the evidence. An appellate court has the duty to review the trial court's denial of a defendant's motion for a new trial on the grounds that the verdict was against the weight of the evidence. The purpose of that review is to determine whether the trial court abused its discretion and not to substitute this Court's judgment for that of the trial court. Thompson v. City of Philadelphia, supra; Austin v. Ridge, 435 Pa. 1, 255 A.2d 123 (1969); and Commonwealth v. Taylor, supra.
In reviewing the trial court's decision concerning the weight of the evidence, an appellate court is not passing on the credibility of witnesses. This is a function that is solely within the province of the finder of fact which is free to believe all, part of none of the evidence. Commonwealth v. *441 Mayfield, 401 Pa.Super. 560, 585 A.2d 1069 (1991). In Commonwealth v. Coyle, 190 Pa.Super. 509, 154 A.2d 412 (1959), we found that the trial court abused its discretion in not finding that the verdict was against the weight of the evidence. In reaching this conclusion we did not reevaluate the credibility of witnesses. However, in examining the record we concluded that the jury wrongly ignored evidence of a blood grouping test which showed that the appellant could not have been the father of the prosecutrix' child. This testimony was apparently disregarded by the jury even though the pathologist who offered it did not have his integrity or professional qualifications questioned and there was nothing in the evidence to indicate any error in the laboratory testing. If we had not reviewed the exercise of the trial court's discretion, the appellant would have remained wrongly convicted. The Supreme Court pointed out in Commonwealth v. Powell, supra, 527 Pa. at ___, 590 A.2d at 1244: "[W]hile the scope of a trial court's discretionary powers to deal with the factual circumstances it confronts is broad, it is not unlimited."
We conclude that we have the right and duty to review the trial court's exercise of its discretion in refusing to grant a new trial on the basis that the verdict was against the weight of the evidence. Nevertheless, we find that appellant's contention is without merit. The appellant had been drinking and using drugs shortly before the accident which resulted in the death of Timothy Smith. The appellant's blood alcohol level was higher than the statutory requirements to establish legal intoxication. He was the operator of the vehicle in question, and a passenger testified that shortly before the vehicle went off the road and into the ditch before hitting a concrete abutment, "he was driving back and forth over the yellow line [and] if there would have been a car coming [in the opposite direction] we would have hit him right then."
The trial court did not act capriciously in determining that the verdict was not against the weight of the evidence and the judgment of sentence must be affirmed.
Judgment of sentence affirmed.
*442 OLSZEWSKI, J., files concurring and dissenting opinion.
POPOVICH, J., files a concurring and dissenting opinion in which CIRILLO and HUDOCK, JJ. join.
OLSZEWSKI, Justice, concurring and dissenting.
I concur in the result reached by the majority in this case. I must dissent from the conclusion that challenges to the weight of the evidence are reviewable by appellate courts.
It is true that as recently as last year, I was of the opinion that the restrictions announced by our Supreme Court in Wallace and Nelson were dicta, and so, nonbinding on this Court. See, Commonwealth v. Eddowes, 397 Pa.Super. 551, 559-61, 580 A.2d 769, 774 (1990). It is still my belief that a direct challenge to the weight of the evidence was not presented to our Supreme Court in either Wallace or Nelson. Nonetheless, I am now persuaded that the view expressed in those opinions is a proper statement of the law.
The majority acknowledges that a true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict. Majority opinion at 436-437, citing Commonwealth v. Taylor, 324 Pa.Super. 420, 425, 471 A.2d 1228, 1230 (1984). Once that point is recognized, it is beyond dispute that a true motion for a new trial on grounds that the verdict is contrary to the weight of the evidence challenges the credibility determination made by the fact-finder. If one admits that sufficient evidence exists, the question becomes which evidence is to be believed. It is also beyond dispute that the fact-finder is free to believe all, part, or none of the evidence presented. Commonwealth v. Fahy, 512 Pa. 298, 516 A.2d 689 (1986); Commonwealth v. Duncan, 473 Pa. 62, 373 A.2d 1051 (1977); Commonwealth v. Sauders, 390 Pa. 379, 134 A.2d 890 (1957).
The majority's citation of Commonwealth v. Coyle, 190 Pa.Super. 509, 154 A.2d 412 (1959), aptly illustrates the irreconcilable conflict that appellate review of challenges to the weight of the evidence creates with the traditional *443 function of the fact-finder. After stating that the fact-finder is free to believe all, part or none of the evidence, the majority cites with approval a decision granting a new trial because the jury apparently disregarded expert testimony. Why is it apparent that the testimony was disregarded? Because the jury did not believe it even though it was unimpeached. The law is clear, however, that a jury may believe all, part or none of the evidence presented even where that evidence is uncorroborated or uncontradicted. Commonwealth ex rel. Green v. Rundle, 413 Pa. 401, 405, 196 A.2d 861, 864 (1964). According to the majority, a fact-finder is free to believe all, part or none of the uncontradicted evidence; however, an appellate court, after reviewing a cold record, may grant a new trial if it determines that the jury should have believed the evidence presented. Thus, the fact-finder is free to reach the same result the appellate court would have reached if presented with the same evidence. Despite protestations to the contrary, the appellate court becomes the final finder of fact in these cases.
Such a challenge to the credibility determinations may properly be addressed to the trial court "who has also observed the witnesses as they testify." Commonwealth v. Farquharson, 467 Pa. 50, 59, 354 A.2d 545, 550 (1976). The trial court may exercise its sound discretion and grant a new trial where the verdict shocks the court's conscience. Commonwealth v. Barnhart, 290 Pa.Super. 182, 185, 434 A.2d 191, 192 (1981). Appellate courts, however, having had no opportunity to observe the evidence as it was presented, are uniquely unsuited to question the credibility determinations of the fact-finder. Farquharson, supra. A cold record produces thin ice on which to support a weight of the evidence claim.[1]
*444 Such pure credibility challenges must be distinguished from weight of the evidence claims which contend that the verdict is a product of speculation or conjecture. Those claims, however, are sufficiency of the evidence arguments miscast as weight of the evidence claims. In my view, if a reliable verdict is impossible to render, then sufficient evidence has not been presented. These types of claims remain subject to appellate review. Farquharson, supra.
Having examined the arguments on both sides of this question, I must "acknowledge the corn"[2] and so, I respectfully dissent.
POPOVICH, Justice, concurring and dissenting.
I cannot join in that portion of the Majority's opinion which determines that a challenge to the verdict on a "weight of the evidence" ground preserves an issue for appellate review. I would find that it does not, and, accordingly, affirm the judgment of sentence (3 to 6 years imprisonment) for homicide by vehicle while under the influence of alcohol against the Defendant/Appellant, Shawn C. Murray, on a basis other than that proffered by the Majority.
The evidence, viewed in a light most favorable to the verdict-winner, indicates that one Timothy Michael Smith and the Appellant embarked on an evening of "bar-hopping" and alcohol consumption at 6:00 p.m. on the 11th of March, 1988. They began their escapade by including Terry Shockey and Perry Hockenberry.
The first item of business was to have a prescription for Zanax filled. Then a case of 16-oz. Busch beer was purchased before traveling to Hockenberry's residence. The four remained at this location for approximately an hour *445 before deciding to drive to the Lakeview Inn to shoot pool and drink. When the Appellant and Mr. Smith were "carded" and found to be underage, neither was served and all four left. Undaunted, these four made their way to two other establishments: Pines Tavern and Burnt Cabin Bar. In each instance, the Appellant and Smith were refused service because of their age. However, at this stage of the evening, the Appellant had consumed at least three cans of 16-oz. Busch beer and several of the pills (Zanax) obtained by Mr. Smith from the pharmacist.
With the futile efforts of the Appellant and Smith to get served in any of the public bars, all concerned decided to bring the evening's activities to a close.
As was the case all night, the Appellant was the driver of his father's 1973 AMC Hornet stationwagon. Mr. Shockey was a passenger in the front of the vehicle, while Mr. Hockenberry sat behind the Appellant and Mr. Smith rested to the right of Hockenberry.
At the crossroads of Route 75 and Fannettsburg Road, a fifth rider (who had traveled with the group since Pines Tavern) exited the vehicle and the others pressed onward with the Appellant at the helm. The vehicle traveled approximately 4 to 5 hundred feet before running off the roadway into a 3-foot culvert and coming to rest after striking a cement abutment.
The force of the impact caused the front seat to dislodge and pressed the driver and passenger against the dashboard. Mr. Hockenberry was able to exit the rear door and secure help. Even with the arrival of the medical personnel within 15 to 30 minutes of the 12:00 a.m. accident, it was discovered that Mr. Smith had sustained a "blunt trauma" to his skull and died. Also, because of Mr. Smith's size (about 6 ft. tall and 240 lbs.) and the position his body came to rest inside the vehicle (his head was wedged toward the front of the vehicle near the dash and his feet were toward the right, rear of the vehicle), the front seat had been pushed forward to the point of trapping the Appellant and Shockey where they sat, i.e., the Appellant was pinned *446 behind the steering wheel while Shockey was "jammed" in the right, front corner of the automobile.
The position of Murray and Shockey was precarious in that the "jaws of life", an hydraulic mechanism, had to be used to open the driver's door and detach the front seat which had wedged itself against the dashboard such that there was no space between the dash, the victims trapped therein and the front seat.
Two medical personnel described the Appellant as being pinned behind the steering wheel precluding his extrication without the aid of the "jaws of life". The second gentleman was in the front, passenger seat "jammed up in th[e] corner".
Jane Kuhn, an emergency medical technician and medic, detected an "odor" of alcohol on the Appellant and found him to exhibit the characteristics of others (some 250 to 300 accident victims) she had found to be under the influence of alcohol.
With the Appellant's removal from the vehicle, he was "life-flighted" by helicopter to the hospital and treated. Also, blood was drawn and found to contain .14% alcohol. Thereafter, the Appellant was charged with driving while under the influence, homicide by vehicle while under the influence of alcohol and homicide by vehicle, reckless driving.[1] A trial by jury followed in which the Appellant was found guilty as charged. A sentence of 3 to 6 years imprisonment was imposed for homicide by vehicle while under the influence of alcohol. A "Motion In Arrest Of Judgment And For A New Trial" was filed by counsel for the Appellant in which, as is relevant herein, it was alleged at Points 7 and 8, respectively:
The verdicts were against the weight of the evidence in that only testimony from actual personal knowledge regarding the manner in which the subject vehicle was being driven at the time of the accident established that *447 the vehicle was being driven in a normal and safe manner.
The verdicts were against the weight of the evidence in that the only evidence offered on the issue of who was driving the subject vehicle at the time of the accident was circumstantial and counter-balanced by other circumstantial evidence tending to dispute the conclusion that Defendant was the driver, providing that the testimony of Jayne Kuhne [sic] was improperly admitted because of the Commonwealth's failure to provide full disclosure to Defendant.
In an opinion and accompanying order dated September 15, 1989, the trial court denied the Appellant's motion for post-verdict relief, and, with regard to Points 7 and 8, found that the contentions were "nothing more than a rehash" of challenges assailing the sufficiency of the evidence found wanting by the trial court. An appeal in forma pauperis to this Court followed, pending which the Appellant was placed on $40,000.00 bail.
In a Pa.R.App.P. 1925(b) statement the Appellant reasserted, inter alia, his Point 7 "against the weight of the evidence" argument. As before, the trial court dismissed the claim as an "attack [on] the decisions of the finders of fact" addressed previously, and, thus, not meriting any additional discussion.
Five issues were argued before and heard by a panel of this Court docketed at No. 745 HBG 1989. With the concurrence of the entire Court, however, the case was certified for en banc consideration to assess whether appellate authority exists to "review challenges to the weight of the evidence", one of the five issues posited for examination before the initial 3-judge panel.
I find it necessary to address only the "weight of the evidence" argument, and my inquiry begins with Commonwealth v. Paquette, 451 Pa. 250, 301 A.2d 837 (1973), wherein a second degree murder conviction for the beating death of the Defendant's 6½-month-old stepdaughter was affirmed.
*448 On appeal, the Defendant contended, inter alia, that the "verdict was against the weight of the evidence". Before responding to this claim, the Paquette Court held that the evidence was sufficient to allow the finder-of-fact to conclude that the child's head injury and resultant hematoma were a direct and substantial factor in her death.
Additionally, evidence of causation while in the Defendant's custody and the presence of motive were deducible from the physical evidence (the attending physician's testimony to the injuries sustained to vital portions of the victim's body) to discount the Defendant's sufficiency of the evidence argument.
In disposing of the "weight of the evidence" argument, the Supreme Court found that the Defendant's two theories in support thereof (the baby fell from a couch and the genetic history of the infant allegedly indicated that death resulted from injuries during an epileptic seizure) were unsubstantiated by the record, and, therefore, did not require the trial judge to direct a verdict of acquittal. As such, the Court observed:
On appellate review of a criminal conviction, we will not weigh the evidence and thereby substitute our judgment for that of the finder of fact. To do so would require an assessment of the credibility of the testimony and that is clearly not our function.
451 Pa. at 257, 301 A.2d at 841 (Citations omitted).
The rationale in Paquette was re-affirmed in Commonwealth v. Farquharson, 467 Pa. 50, 354 A.2d 545 (1976), which dealt with the Defendant's (a Dr. Lois Farquharson's) conviction of conspiring with a Ms. Burnette to shoot a Dr. Weingrad.
Ms. Burnette was the sole witness for the Commonwealth to the events leading to the fatal wounding of Dr. Weingrad, a case predicated against the Defendant on vicarious liability as a consequence of shared criminal intent and the existence of a conspiracy between the Defendant and Ms. Burnette.
*449 The Defendant contended that Ms. Burnette's testimony was so unreliable and untrustworthy that the jury should have rejected it as not being credible. The jury's reliance upon such testimony, as argued by the Defendant, justified the award of a new trial. In denying the requested relief, the Supreme Court remarked that:
Traditionally under our system of jurisprudence, issues of credibility are left to the trier of fact for resolution. While there may be some legitimacy for a trial court, who has also observed the witnesses as they testified, to consider the weight of the evidence and to that extent review the jury's determination of credibility, there is surely no justification for an appellate court, relying solely upon a cold record, to exercise such a function.
"On appellate review of a criminal conviction, we will not weigh the evidence and thereby substitute our judgment for that of the finder of fact. To do so would require an assessment of the credibility of the testimony and that is clearly not our function."
This concept, however, must be distinguished from an equally fundamental principle that a verdict of guilt may not be based upon surmise or conjecture. Following this principle, courts of this jurisdiction have recognized that were evidence offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding.
467 Pa. at 59-60, 354 A.2d at 550 (Citations omitted).
The Court in Farquharson went on to highlight the difference between Commonwealth v. Bennett, 224 Pa.Super. 238, 303 A.2d 220 (1973), and the evidence confronting it. In Bennett, the testimony of a single individual was held to be so contradictory as to render it incapable of reasonable reconciliation, and, therefore, the verdict could not be sustained. In contrast, in Farquharson, the Defendant's own version of the events surrounding the shooting, when viewed in conjunction with the admittedly biased account of Ms. Burnette (as the actual perpetrator and her *450 plea of guilty to murder generally where sentence had not yet been imposed), "was sufficient to provide an indicium of trustworthiness to the testimony of ... Burnette on the critical issue sufficient to permit the question to be properly left to the trier of fact. * * * Restated, from the statements of [the Defendant] at trial and to the police upon her arrest, the jury was provided an independent basis for finding that the alleged ... conversation concerning the shooting ... did in fact take place. Thus, the only fact then to be resolved was the position taken by [the Defendant] in that conversation, a fact clearly appropriate for a jury to determine." Id., 467 Pa. at 63 & n. 11, 354 A.2d at 551-52 & n. 11.
To the same effect, see Commonwealth v. Holmes, 486 Pa. 415, 406 A.2d 510 (1979), wherein the Defendant challenged a victim's testimony (a Jessie Wallace) as replete with contradictions and omissions, and at odds with other witnesses present during the occurrence leading to the shooting death of Bernard Pette and the wounding of Mr. Wallace by the Defendant.
The Holmes Court conceded that "unreliable and contradictory" evidence, rendering a verdict based thereon pure conjecture, would not be permitted to stand despite the axiom that credibility was entrusted to the fact-finder. Upon a review of the prosecution's testimony in the case, the court held that "the weight to be given to the testimony of Wallace was properly left to the jury" since it was neither unreliable nor contradictory so as to convert the verdict into a product of conjecture.
Moreover, the Holmes Court found that the asserted contradictions were more fictional than substantive. And, "even accepting the presence of factual discrepancies in the Commonwealth's evidence," the Court pointed out that the result sought by the Defendant (a challenge to the sufficiency of the evidence seeking a discharge) was not mandated "since that fact reflect[ed] upon the weight of the evidence not its admissibility." Id., 486 Pa. at 420 n. 1, 406 A.2d at 512 n. 1, citing Commonwealth v. Kahley, 467 Pa. *451 272, 290, 356 A.2d 745, 754 (1976), cert. denied, 429 U.S. 1044, 97 S.Ct. 746, 50 L.Ed.2d 757 (1977).
The "weight" to be assigned to the testimony is for the finder-of-fact and not a matter of appellate scrutiny. Accordingly, the Defendant's sufficiency claim, which interjected the unreliability of Wallace's testimony as the Achillees' heel of the case, was found to be meritless after a review of the testimony proved sufficient on its face to convict, and any contradictions went to the weight to be assigned the evidence and not its exclusion from the finder-of-fact's consideration. Cf. Commonwealth v. Brantner, 486 Pa. 518, 522 n. 2, 406 A.2d 1011, 1013 n. 2 (1979) (A weight of the evidence argument questions the jury's determination of the credibility of the witnesses; there is no justification for an appellate court to exercise such a function).
Consistency in the application of the weight of the evidence argument, as an assessment reserved to the finder-of-fact (which under Farquharson included a trial judge who had observed the witnesses while testifying) was acknowledged by Commonwealth v. Pronkoskie, 498 Pa. 245, 445 A.2d 1203 (1982), a case in which an assault on a first degree murder conviction was made on sufficiency grounds (negative results of a paraffin test) construed as a motion for a new trial claim that the verdict was against the weight of the evidence, a matter committed to the sound discretion of the trial court.
As a prelude to the decision, Farquharson's admonition against a weighing of the evidence (i.e., substituting an appellate court's judgment for that of the finder-of-fact) as a credibility assessment in an appellate format was recounted and endorsed, with the caveat that a verdict premised upon surmise or conjecture was not to be tolerated.
The unanimous Court in Pronkoskie concluded that, even assuming conflicting evidence on the question of the negative paraffin test, the jury was free to accept one expert's opinion (that the gun powder could have been rubbed off to cause the negative results) over that of another (that the *452 powder could not have been removed) in finding the Defendant guilty. Likewise, the Court observed that the negative results of testing for glass or ceramic particles on the Defendant's clothing went to the weight of the evidence, an argument the review of which was within the trial court's discretion to evaluate in a post-verdict context.
In dictum, the Court added that such an argument (as to the negative glass and ceramic particles test) was unavailing to undermine evidence of the specific intent to kill. It would have been for the jury to weigh the probative effect of such evidence inasmuch as there was no evidence that the perpetrator would have been likely to come in contact with such particles.
Finally, with Commonwealth v. Nelson, 514 Pa. 262, 523 A.2d 728 (1987), a case in which the Defendant appealed his death sentence for the strangulation of his wife, the Court reaffirmed its longstanding position that the appellate courts are not the finder of the truth, nor is it within their province to assess the credibility of the testimony. See Commonwealth v. Woodhouse, 401 Pa. 242, 261, 164 A.2d 98, 108 (1960).
At trial, the Defendant's efforts to convince the jury that he acted either in the heat of passion or under a diminished capacity brought on by his consumption of alcohol on the night of the killing, discounting the deliberate and premeditated nature of the homicide, proved to be unpersuasive.
The Court in Nelson responded to the Defendant's averment that the evidence was not legally sufficient to establish his specific intent to kill by looking to the act itself: When the victim's life was not extinguished by the assault with a hammer and a chisel, the assailant secured an electric cord to complete the act.
As to the protest that the verdict was against the weight of the evidence, the Court wrote:
Unlike the challenge of legal sufficiency of the evidence, the complaint that the verdict was against the weight of the evidence requires an assessment of the *453 credibility of the testimony offered by the Commonwealth. Commonwealth v. Brantner, 486 Pa. 518, 522 n. 2, 406 A.2d 1011, 1013 n. 2 (1979); Commonwealth v. Farquharson, 467 Pa. 50, 60, 354 A.2d 545, 550 (1976). It is a rule of this Commonwealth that an appellate tribunal should not entertain a challenge to the weight of the evidence since their examination is confined to the "cold record." Commonwealth v. Pronkoskie, 498 Pa. 245, 445 A.2d 1203 (1982); Commonwealth v. Farquharson, supra; Commonwealth v. Paquette, 451 Pa. 250, 301 A.2d 837 (1973). However, where the penalty of death is imposed we will consider such a complaint.
514 Pa. at 271 n. 3, 523 A.2d at 733 n. 3. Accord Commonwealth v. Wallace, 522 Pa. 297, 314-15, 561 A.2d 719, 728 (1989). Obligated by the imposition of death to address the Defendant's "weight of the evidence" argument, the Court put into perspective the role of the fact-finder as one endowed with the authority to believe any, all or none of a party's evidence, be it the prosecution or the defense.
True to such axiom, the Supreme Court refrained from interjecting itself into a credibility assessment mode, a function traditionally reserved to the arbiter-of-fact and "not [to] be disturbed unless the failure to do so would be tantamount to a miscarriage of justice ... [brought about] where the quality and/or quantity of the evidence clearly d[id] not support the verdict...." Id., 514 Pa. at 273, 523 A.2d at 734. Rather, the Court merely examined the allegations proffered (diminished capacity and heat of passion defenses) in a "weight of the evidence" form as a question of credibility rightfully left to the jury, and in a post-verdict forum for the trial judge to resolve. Id.
Absent any indication that the quantum or quality of the evidence was marred so as to convert the verdict to a miscarriage of justice, the judgment of sentence was left intact.
To the extent that this Court has taken it upon itself to respond to challenges on appeal assailing a verdict as being against the weight of the evidence, and looking beyond the *454 admonition in Commonwealth v. Nelson, supra, to the contrary, I view such rulings to be deviations from established case law. See, e.g., Commonwealth v. Badman, 398 Pa.Super. 315, 325-27, 580 A.2d 1367, 1372-73 (1990); Commonwealth v. Pirela, 398 Pa.Super. 76, 83-84 & n. 7, 580 A.2d 848, 852 & n. 7 (1990); Commonwealth v. Jenkins, 396 Pa.Super. 395, 578 A.2d 960 (1990); Commonwealth v. McLean, 396 Pa.Super. 23, 578 A.2d 4 (1990).
It must be recalled that a pure challenge to the weight of the evidence calls into question the judgment of the finder-of-fact necessitating an assessment of the credibility of the witnesses, a function never intended to be performed by an appellate tribunal save in death penalty cases. See Wallace, supra; Nelson, supra; Pronkoskie, supra. But, this weight of the evidence/credibility analysis is to be distinguished from the basic precept that a verdict is not permitted to stand in the face of evidence which, in quality and/or quantity, falls short of the standard of proof necessary to justify a conviction. This determination was never intended by the Pennsylvania Supreme Court decisions to be excised from appellate inquiry. See Pronkoskie, supra; Farquharson, supra.
If the assault upon the verdict is framed as being against the weight of the evidence, the unequivocal language in Nelson, supra, cited with stark clarity in Wallace, supra, would require us to label the matter an "assessment of the credibility of the testimony" presented by the prosecution, an area which an appellate court should refrain from examining. The Majority appears to ignore such a pronouncement.
It is not for Superior Court to minimize a practice described by the Supreme Court as a "rule" which has been followed repeatedly from as early as the 1960 decision in Commonwealth v. Woodhouse, supra, and coming full circle in Wallace, supra.
The Majority's argument that the Nelson/Wallace cases' reference to the non-reviewability of a weight of the evidence *455 claim is of no force or effect because it was dicta is untenable.
In Nelson/Wallace, the Supreme Court was not confronted with a weight of the evidence claim in the sense that it needed to be responded to under traditional preservation/reviewability grounds. Nonetheless, the Court took the occasion to reaffirm its long-standing objection to addressing "weight of the evidence" allegations in the context where challenges to credibility are made, a subject more appropriately reserved for the trier-of-fact.
Moreover, it is beyond cavil that the Nelson Court, but for the imposition of the sentence of death upon the Defendant seeking appellate review, would not have addressed the Defendant's heat of passion and diminished capacity arguments under the "weight of the evidence" rubric. To the same effect see Wallace, supra, 522 Pa. at 315, 561 A.2d at 728.
Accordingly, I would hold that in those instances where an attack upon the verdict is couched in "weight of the evidence" terms, in contradistinction to a claim that the evidence is so inconsistent and contradictory so as to render the verdict the product of mere surmise or conjecture, no issue is preserved for review under the legend: "Weight of the evidence". See Wallace, supra; Nelson, supra; Pronkoskie, supra; Commonwealth v. Bennett, 224 Pa.Super. 238, 303 A.2d 220 (1973); cf. Commonwealth v. Holmes, 315 Pa.Super. 256, 461 A.2d 1268 (1983) (en banc) (Boiler-plate post-verdict motions challenging the sufficiency and/or weight of the evidence preserve no issue for review). To the extent that the Majority holds to the contrary, I disagree and I would find that, in compliance with the "rule" reaffirmed by the Nelson/Wallace Court (proscribing review of "weight of the evidence" claims on appeal), the Appellant's "weight of the evidence" argument succumbs to the Nelson/Wallace prohibition. It reads:
Were the verdicts against the weight of the evidence in that the only testimony from actual personal knowledge regarding the manner in which the subject vehicle was *456 being driven at the time of the accident established that the vehicle was being driven in a normal and safe manner?
I would deem such a contention to be of the type proscribed appellate scrutiny by Nelson/Wallace and its predecessors as a credibility challenge to be resolved by the finder-of-fact and not an appellate tribunal.
I discern a common thread running through the Supreme Court cases touching upon the issue posed for our consideration, i.e., where testimonial or physical evidence exists which, if believed by the trier-of-fact, is sufficient to sustain a verdict, it is not for an appellate court to interpose itself into the weighing of the evidence. The exception exists where the quantity and/or quality of the evidence is such that the verdict is the product of surmise or conjecture. In those instances, an appellate court will not hesitate to involve itself to let justice prevail. See Pronkoskie, supra; Bennett, supra.
Unlike the Majority, I would refrain from doing so at bar because I do not find the preservation of a reviewable issue under the "weight of the evidence" appellation, the underlying allegations of which more appropriately equate with a challenge to the sufficiency of the evidence.
Because the Majority has endorsed the review of a "weight of the evidence" claim, which under the particular facts here I believe to be at odds with the Nelson/Wallace line of cases, I dissent.
CIRILLO and HUDOCK, JJ. join this concurring and dissenting opinion.
NOTES
[1] The appellant has raised four other issues on appeal which have been properly adjudicated by the court below in its opinion and supplemental opinion by Keller, P.J. We adopt those opinions in disposing of appellant's issues one through four.
[2] The Pennsylvania Supreme Court has long held that a new trial may be granted on the grounds that the verdict is against the weight of the evidence. Commonwealth v. Meadows, 471 Pa. 201, 369 A.2d 1266 (1977). See also, Commonwealth v. Zapata, 447 Pa. 322, 290 A.2d 114 (1972); Commonwealth v. Cheatham, 429 Pa. 198, 239 A.2d 293 (1968); Commonwealth v. Vogel, 501 Pa. 314, 461 A.2d 604 (1983); Commonwealth v. McFadden, 402 Pa.Super. 517, n. 2, 587 A.2d 740, n. 2 (1991).
[3] In the case sub judice, the court below found that the challenges to the weight of the evidence were in effect challenges to the sufficiency of the evidence.
[4] In referring to Nelson and Wallace, supra, we stated in Commonwealth v. Eddowes, 397 Pa.Super. at 560-561, 580 A.2d at 774:

Nevertheless, these cases do not expressly preclude us from addressing a weight of the evidence claim. Furthermore, neither of these cases involved a direct challenge to the weight of the evidence; therefore, this pronouncement is dictum rather than binding authority. This Court has traditionally reviewed weight of the evidence claims; accordingly, we will continue to address the merits of such claims until directed to the contrary by our Supreme Court.
Commonwealth v. Jenkins, 396 Pa.Super. 395, 578 A.2d 960 (1990) also concluded that Nelson and Wallace do not prohibit us from considering weight of the evidence arguments. See also, Orsini v. State Farm Insurance Co., 399 Pa.Super. 144 n. 2, 581 A.2d 1378 n. 2 (1990), wherein we stated: "However, we do not believe that the court intended, by the passing statements made in these two cases [Nelson and Wallace], to abrogate all review for weight of the evidence."
[1] The majority also cites Commonwealth v. Powell, 527 Pa. 288, 590 A.2d 1240 (1991) for the proposition that exercises of the trial court's discretion when granting a new trial are reviewable by appellate courts. I believe Powell is clearly distinguishable. The trial court in Powell, sua sponte, granted a new trial in the interests of justice because it determined that the defendant had been coerced by the court to waive his right to a jury trial. A challenge to the weight of the evidence was not presented in Powell. Thus, though Powell stands for the proposition that the exercise of the trial court's discretion in sua sponte granting a new trial in the interest of justice is reviewable, it does not follow that our Supreme Court meant to contradict its prior statements in Nelson and Wallace that the trial court's exercise of discretion in disposing of a challenge to the weight of the evidence is not reviewable.
[2] Congressman Charles A. Wickliffe of Kentucky, as quoted in: Funk, A Hog On Ice & Other Curious Expressions, Harper & Row, 1985.
[1] Trial judge found the Appellant guilty of reckless driving.